**Selma C. PARRIS, Plaintiff,**

v.

**DEAN WITTER REYNOLDS, INC., and Richard Neal Poss, Defendants.**

**Civ. A. No. C86–2399A.**

United States District Court,
N.D. Georgia,
Atlanta Division.

May 13, 1987.

---

Billy L. Spruell, Atlanta, Ga., for plaintiff.

Paul W. Stivers, Rogers & Hardin, Atlanta, Ga., for defendants.

### ORDER

ROBERT H. HALL, District Judge.

This case involves plaintiff investor's claims against defendant broker and brokerage house for (1) violations of the Federal Securities Exchange Act of 1934, § 10(b), (2) state common law fraud, (3) state breach of fiduciary duty and (4) feder-

al civil RICO. Currently before the court are defendant Poss and defendant Dean Witter's motions to compel arbitration and to dismiss plaintiff's complaint. For the reasons stated herein, the court GRANTS IN PART defendants' motions to the extent specified in this order.

## FACTS

Plaintiff first opened an account with Dean Witter on or about July 1, 1982, when plaintiff opened a securities trading account. On or about April 15, 1983, plaintiff opened an Individual Retirement Account (IRA) and a Keogh account with defendant Dean Witter as well. (Parris Dep. at 41–45, Complaint ¶ 11) Defendant Poss allegedly was plaintiff's broker for all these transactions.

These accounts previously held with Bache, Halsey, Stuart, Shields, Inc., were transferred to Dean Witter when defendant Poss changed his professional affiliation from Bache to Dean Witter. After receiving the necessary transfer documents, Dean Witter opened accounts in plaintiff's name, assigned numbers to the accounts and allegedly mailed account opening documents to plaintiff for her signature. Defendants contend that documents were mailed to plaintiff for the stock trading accounts. Defendants contend that plaintiff was sent a "Customer's Agreement" form and an "Option Client Information" form containing an "Option Trading Agreement" on the reverse side to be completed and signed for each of these accounts. Dean Witter contends that these documents were mailed out on July 1, 1982 and received back from plaintiff on July 8, 1982 (Graham Affidavit ¶ 10).

Plaintiff disputes that she received the Option Client Information forms by mail and contends that defendant Poss gave her the documents over a drink at the Squire Inn lounge in Marietta, Georgia. Plaintiff further asserts that she executed the documents in blank at that meeting, not reading the documents before she signed them and relying wholly on defendant Poss' representations that the Options Trading Agreement was merely for the purpose of showing that Poss was her broker. (Parris Dep. at 55–56; Plaintiff's Opposition Brief at 4). Thus, plaintiff contends her signature on these documents is ineffective.

Plaintiff apparently does not dispute receiving the Customer's Agreements by mail. Parties have produced a copy of these one-page agreements. The Customer's Agreements are in the form of a letter. In the body of the letter appears several enumerated provisions at the end of which appears the closing "Very truly yours" and a signature and date line. Below this signature line appears the heading "Customer's Loan Consent" followed by a sentence explaining the terms of the loan consent. Below this appears a separate date and signature line. Plaintiff signed only the signature line appearing at the very bottom of the page following the loan consent. Plaintiff contends she intended only to consent to the last paragraph of the document, the Customer's Loan Consent, rather than the entire agreement above. (Parris Dep. at 64–65).

Because both the Customer's Agreements or the Options Trading Agreements contain the following arbitration clause:

> Any controversy between us arising out of or relating to this agreement or the breach thereof, shall be settled by arbitration, in accordance with the rules, then obtaining, of either the American Arbitration Association, the Board of Arbitration of the New York Stock Exchange, the American Stock Exchange, the Chicago Board Options Exchange or the National Association of Securities Dealers Inc. as I may elect. If I do not make such election by registered mail addressed to you at your main office within five (5) days after receipt of notification from you requesting such election, then I authorize you to make such election in my behalf.

the threshold question before the court is whether either of the agreements are effective so that any of the arbitration clauses contained therein are enforceable. Plaintiff contends both agreements, and therefore both arbitration clauses, are ineffective in that plaintiff signed only the Customer's Loan Consent portion of the doc-

uments entitled Customer Agreement, and that defendant Poss fraudulently induced plaintiff to sign the Option Trading Agreement. Further facts will be disclosed as necessary to the disposition of defendants' motions.

## DISCUSSION

Defendants have moved for arbitration of plaintiff's claims under Section 4 of the Federal Arbitration Act 9 U.S.C. § 4 relying on the arbitration clauses contained in the Customer's Agreements for each of plaintiff's accounts and the arbitration clause of the Option Trading Agreement contained in the Option Client Information form for each of plaintiff's accounts. Section 4 describes the procedure a court must follow where a party challenges the enforceability of a written agreement to arbitrate as follows:

> A party aggrieved by the alleged ... refusal of another party to arbitrate under a written agreement for arbitration may petition any United States district court ... for an order directing that such arbitration proceed in the manner provided for in such agreement.... The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration ... is not in issue, the court shall make an order directing the parties to proceed to arbitration.... If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to trial thereof.

■ Section 2 of the Arbitration Act, 9 U.S.C. § 2 supplies the legal standard for evaluating section 4 challenges to the "making" of a written agreement to arbitrate. The agreement should be enforced unless there are "grounds as exist at law or in equity for the revocation of any contract." Thus, this court's general inquiry here, where plaintiff contests the enforceability of the arbitration clauses, is whether the "making of the agreement to arbitrate" may be rendered revocable at law or equity. However, the Arbitration Act and the caselaw interpreting the Act spell out a clear procedure and division of labor between the court and the arbitration panel in making this determination.

■ Under Section 4, upon a party's application for an order directing arbitration, "[t]he court shall hear the parties" to satisfy itself "that the making of the agreement for arbitration ... is not in issue." If the court determines there is a genuine issue as to the "making" of the arbitration clause, and the party resisting arbitration has demanded a jury trial within five days of receiving notice of the application for arbitration, the jury is to decide the issue. If no jury demand has been timely made on this issue, the court acts as the fact finder. *Oliver v. Harris*, 815 F.2d 716 (Table) (Slip Op. at 3, n. 3) (11th Cir.1987). If, however, plaintiff challenges the making of the entire contract as opposed to the arbitration clause itself, the determination of whether the contract, and therefore the arbitration agreement, is valid is for the arbitrator. *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). The court there held that:

> Under § 4, ... the federal court is instructed to order arbitration to proceed once it is satisfied that *'the making of the agreement for arbitration ... is not in issue.'* Accordingly, if the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the 'making' of the agreement to arbitrate—the federal court may proceed to adjudicate it. *But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally.*

388 U.S. at 403–04, 87 S.Ct. at 1806 (emphasis added).

Subsequently, courts have held that if the arbitration clause is broad enough to encompass challenges to the entire agreement including fraud in the inducement, duress, unconscionability, undue influence, etc. consideration of such challenges is for the arbitrators. *Coleman v. Prudential Bache Securities, Inc.*, 802 F.2d 1350, 1352 (11th Cir.1986) (unconscionability); *Miller v. Drexel Burnham Lambert, Inc.*, 791 F.2d 850 (11th Cir.1986) (allegations as to

contract formation are for the arbitrators); *Schacht v. Beacon Life Ins. Co.*, 742 F.2d 386, 389–90 (7th Cir.1984) (fraud in the inducement); *See also Wilson Wear, Inc. v. United Merchants & Manufacturers, Inc.*, 713 F.2d 324, 327–28 (7th Cir.1983).

The question then for the court is whether, with respect to the Customer Agreements and/or the Options Trading Agreements, plaintiff has raised a genuine issue as to the "making" of either the arbitration clause or the entire agreement itself.

### A. *The Customer's Agreements*

As to the Customer's Agreements, plaintiff does not dispute that she received such documents by mail, (Parris Dep. at 63–64), and that no one was present when she signed them. (Parris Dep. at 66–67). Plaintiff's signature appears at the bottom of the page on the lines below the customer's loan consent language. Plaintiff asserts that it was her intention to sign only the Loan Consent and not be bound by the provisions of the Customer's Agreements. (Parris Dep. at 64–65). Plaintiff contends that defendant Poss' wife led her to believe that the Customer Agreements were submitted for her signature only in order for her to open a VISA Card account with a $10,000 line of credit (Parris Dep. at 64–65). Plaintiff asserts that "I assume[d] that the only thing that would apply to my $10,000 line of credit would be the loan consent that I signed at the bottom of the page. And I didn't think any of the other business applied to me getting a $10,000 line of credit and I didn't sign it." *Id.*

Defendants counter that plaintiff signed more than one Customer's Agreement form. Defendants contend that plaintiff applied for a VISA Card for one account, but not for the other. Yet defendant contends that she executed the two Customer's Agreements in the same manner, thus calling into question the plausibility of plaintiff's contentions.

Further, defendant contends that plaintiff received other documents which relate solely to her application for a VISA account. Plaintiff evidently executed these "Active Asset Accounts" in the same fashion as she executed the Customer's Agreements, signing only the Loan Consent and not the agreement proposed for the VISA account. Defendants argue that plaintiff has confused her alleged execution of the Customer Agreements for that of the VISA documents.

Defendants also argue that the Loan Consent is merely an addendum to the Customer's Agreement, authorizing the use of the Customer's Securities for trading on the margin. Defendants argue the Customers Loan Consent has little effect standing on its own and is "tied" to the Customer's Agreements.

The court finds that there is a genuine issue presented as to plaintiff's execution and making of the Customer's Agreements. Moreover, the court finds that plaintiff challenges the entirety of the two agreements, not merely the arbitration clause, and thus pursuant to Section 4 of the Arbitration Act and *Prima Paint supra*, the validity of these agreements must be determined by the arbitrators.

### B. *Option Trading Agreements*

Plaintiff disputes defendants' contentions that she received the Options Information forms by mail, (Parris Dep. at 46, 57–59). She also disputes she signed it privately and returned it by mail. *Id.* Plaintiff contends that defendant Poss presented the form to her in blank over drinks at a Marietta, Georgia cocktail lounge on or about July 8, 1982. (Parris Dep. at 50–60) Plaintiff contends she did not read the provisions of the form and that she wholly relied upon defendant Poss' representations that the form was merely for the purpose of showing that Poss was her broker. *Id.* Plaintiff asserts that at the time she signed the form, all the handwritten and typewritten information which presently appears on the form did not appear. *Id.* Plaintiff asserts defendants must have incorrectly filled in such information later. Plaintiff's Opposition Brief at 5–6. Plaintiff points to numerous inaccuracies in the information recorded on the form to substantiate her position. *Id.*

Defendants counter that plaintiff must be bound by her signature regardless of whether she read the form's terms or relied on defendant Poss' statements. Defendants contend Poss owed plaintiff no fiduciary duty in the making of the agreement, and therefore, plaintiff had a duty to read the form and had no legal right to rely on any of Poss' statements without reading the language of the form.

■ Thus, the court determines that a genuine issue exists as to the "making" of the Options Trading Agreements as plaintiff has challenged the formation of the entirety of the agreement as fraudulently induced. Thus, pursuant to *Prima Paint supra,* the court must submit the question of validity of the Options Trading Agreements, and thus the enforceability of the arbitration clauses, to the arbitrators.

The court, accordingly, in default of plaintiff electing a arbitration forum within the five days allotted by the arbitration clauses, DIRECTS defendants to file an election of arbitration forum not later than ten (10) days after the date of this order. The court also DIRECTS plaintiff to proceed to arbitration on the questions identified above. Plaintiff should file the complaint and other operative documents with defendants' elected arbitration panel not later than twenty (20) days after the date of defendants' filing of its election of arbitration forum, or twenty days after the date of this order, whichever is later. The arbitrators' findings on these limited questions should be filed with this court not later than August 31, 1987.

If the arbitration panel finds that any or all the arbitration agreements at issue here are enforceable, the arbitrators must return the case to this court for resolution of the following questions:

1) Whether both defendant Dean Witter and defendant Poss are covered by the operative arbitration clause(s)?

2) Does the scope of the operative arbitration clause(s) cover the disputes at issue here?

3) Pursuant to the Supreme Court's forthcoming ruling in *McMahon v. Shearson/American Express, Inc.,* cert granted — U.S. ——, 107 S.Ct. 60, 93 L.Ed.2d 20 (1986), which of plaintiff's claims are arbitrable?

If the arbitrators find none of the arbitration clauses to be enforceable, the arbitrators must return the case to this court for final disposition.

The Clerk is DIRECTED to resubmit the case to the court on September 1, 1987. The court STAYS this matter until that time.